17-cv-01519 (CS)

Dorine R. Watkins v. First Student Inc



May 17, 2017

RECEIVED
MAY 25 2017
U.S.D.C.
WP

Hon. Cathy Seibel
United States District Judge
United States District Court for the Southern District of New York
Courtroom 621
300 Quarropas St.
White Plains, NY 10601-4150

I respectfully request leave to amend my complaint to remedy certain problems pointed out by defendants' counsel.

1. Title VII and related claims – hostile work environment.

    I will allege facts that will preclude dismissal of my Title VII claim and related state law discrimination claims for a hostile work environment based on my status as a white woman (one of only 3 working at the company during the relevant time period). I was mistreated on numerous occasions due to my race and gender. Other white women were similarly mistreated, while women of color and men were not treated in this way.

    a. Oct. 2014 I began helping a man name Stan Outerbridge start up the buses every morning. I helped him because he could hardly walk. I would start 45 or 50 vans up in the morning. The weather was horrible it was always raining and very windy. When my employer found out I was helping him, the lot worker for the employer began to lock the doors on many of the vans to make it difficult for me to access them. To gain access you would have to climb up the back through the emergency exit.

    b. In the colder months (starting November 2014 until February 2015) I would pre-trip my van (make sure the vehicle is ready to be driven and has no mechanical problems) and then go inside to check. On several occasions (at least 12) when I came out my van would be missing from the parking space where I left it. I would have to walk for 4 or 5 blocks to find it. My employer had the van moved to make things at work more difficult for me.

    c. In December 2015 on at least 7 occasions the fuel truck that fills up the buses twice a week failed to put fuel in my bus. I had to either go to Mount Vernon or up to Mamaroneck to get fuel. Every other bus in the lot was provided with fuel but mine was not.

    d. In May 2015 a company employee deliberately crashed his bus into my car causing $2400 of damage.

    e. On several dates in May and June of 2015, my car was prevented from entering and exiting the garage in Mount Vernon. I was prevented from entering and exiting the garage by office personnel from my employer. I was told to park in the garage in Mount Vernon to protect

my car from damages. When I arrived everyday at relatively the same time everyday The garage was blocked by buses, cars, chairs, people sitting etc. When I tried to come out after my run I was blocked by tables, couches, cones, chairs and cars making it impossible to come out and the office workers just watched and laughed at me. I was the only person who was affected by their efforts to block the entrance to the garage.

f. In or around Jan. 2015 offensive comments were written of the back of my van employees of First Student used their fingers to write "complainer" in the dust on the back of my van. They did the same thing a few months later in the Spring of 2015. A co-worker Jaina saw what they had done.

g. In 2015, I was given an invoice by Andy Moise the safety manager to go for a drug test approximately two miles away 30 minutes before my mandatory physical. If I didn't make it back in time for my physical I would have lost my job. Getting to and from the appointment was very stressful and caused my blood pressure to go up. I could have easily lost my job because of high blood pressure or for missing my appointment.

2. Title VII and related claims – retaliation.

When I reported the hostile work environment to the EEOC on July 2015, my employer retaliated against me by causing me to suffer several adverse employment events. The worst of these was that the buses I drove were on multiple occasions deliberately sabotaged and disabled. I have audio and video evidence of the damage to my buses.

h. In early September 2015 a lot worker Russel Robinson who always worked out of the Mount Vernon yard came to the New Rochelle lot and blocked my bus with his personal car so I couldn't get my bus out for my run.
i. On Sept. 17, 2015 the same lot worker pulled out of a parking space as I walked by on my way to my bus and deliberately almost hit me. I quickly put my video on my phone and as I was saying Russel tried to run me over, I could hear his brakes screeching behind me and he almost hit me again. A New Rochelle Police Report was filed.

j. I had multiple problems with my buses from Sept 3, 2015 to the day of my termination Sept.27, 2016. Sometimes twice a day my bus would have mechanical problems and other days my employer would switch my bus for no reason saying someone needed it. Other employees may have problems with their buses once a year, maybe twice. I had 22 different buses in an 8 month period with dangerous problems, such as brakes locking up, smoke in the bus, brakes on fire, bald tires, cut tires, and the entire bus shaking violently when the children on the bus. My windshield wipers were cut on one occasion during this period and on another there were toxic fumes in the bus.

k. On one occasion in January 2015 my bus lost compression and black smoke filled the bus, which was filled with children.

l. On Jan. 25th 2016 there was a snow storm, and the snow was very deep so I couldn't see the treads on my tires. There had been a DOT inspection in Nov. so I wasn't too worried. I went off the road on Anderson Hill Road in West Harrison and slid into a boulder. The gate arm mechanism was torn off the bus. When I got back to the yard I noticed now that the snow had been cleared that all my tires were completely bald. No other bus in the lot had bald tires I videoed 13 buses parked along side one another in the same lot where I parked and all of the treads on their tires were almost new. I also videoed my bus and my slick tires. The bald tires were replaced with new ones but a few days later the bald tires mysteriously reappeared on my bus.

m. On Feb. 2, 2016 my bus 274 was not starting so Edwin the dispatcher at New Rochelle texted me to take another bus, number 301. Edwin was not present at the lot at this time. After searching three parking lots I found that the bus wasn't at the location at all.

n. On this same date, my car again was being blocked, and there was no question that it was intentional because another employee's car was a quarter of an inch away from my front bumper, with half of his car on the sidewalk. I waited for him and when I approached him he said the dispatcher Edwin had his keys.

o. On another day in Feb. 2016, when I came in to do my afternoon run I noticed the rear tire on my bus had three large, deep gashes. I believe that the gashes were made deliberately by my employer.

p. On at least two occasions in September 2016, I called my employer multiple times to report mechanical problems and ask for a replacement vehicle because there were kids on the bus and my calls were unanswered/ignored.

q. I was unlawfully terminated in retaliation for my EEOC complaint filed in July 2015. In September 2016, I had a problem with the door of the bus, which wouldn't close. I called for assistance to First Student several times and no answer, I then tried to school's director of transportation Maria Poleski but was unable to reach anyone. Eventually I was able to get the door to close and dropped the kids off at the school. I called Mount Vernon base and John Polomino now answered the phone, I told him I was going to Maria ,I also told him to cover my run that he was playing a dangerous game by sabotaging my bus when kids were on it. I went into the school to tell the transportation director what had happened. While I was there Polomino called the transportation director, falsely said that psychotic and abandoned my bus, my bus was sitting in front of Maria's office at the Louis M. Klein Middle School when I left Maria's office I was called on my phone by Polomino that I was officially terminated effective immediately.

3. FMLA claim.

Defendants argue that my FMLA claim is time barred because the events in question occurred over two years before I filed my complaint. My claim would be time-barred only if defendants' violation of the FMLA was not willful. I will allege facts making clear that defendants' FMLA violation was willful, so that my claim is timely under the 3-year limitations period for willful violations.

In May 2014, I requested time off from my employer in two weeks to be with my sons, both of whom were having surgery in Florida. I was told there was no one to cover my runs. The failure to provide me with leave to be with my sick sons was clearly a willful violation of the FMLA.

4. FLSA and NYLL claims.

My records show that during the following weeks I worked more than 40 hours but was not paid overtime wages in violation of the FLSA and NYLL: All of these instances occurred within the 6 year limitations period under state law and within the 3 year limitations period for federal law (measured from when I originally filed in state court in November 2016 before removal to this court): workweeks of **12/15/13, 01/05/14, 01/12/14,-1/26/14.**

I expect that discovery will provide me with evidence of other weeks within the limitations period when I worked more than 40 hours but was not paid overtime wages.

As I have provided a brief summary of the events that have happen to me for the past 3 and a half years. It is my belief that none of the incidents were coincidence. It will show the carefully calculated and deliberate ways to harm me. It is my belief that having the venue changed ,First Student's action were again, deliberate.

Sincerely,

Dorine Watkins