RECEIVED
JUN 13 2017
U.S.D.C.
WP

6/130/17

Hon. Cathy Seibel
United States District Judge
United States District Court for the Southern District of New York
Courtroom 621
300 Quarropas St.
White Plains, NY 10601-4150

### Case Number 7:17-cv-01519-CS Requested Demand Letter.

There is a case for the spread hours and the Call In pending in West. Supp.

1. **FMLA** claim, In May of 2014 I had asked my supervisor for time off in the next few weeks to be with my sons while they both undertook heart surgery. ,John Polomino my supervisor said NO I have no one to cover your runs, and denied by request for leave.. At the time I had 17,000.00 worth of credit on my cards and could have easily afforded a week's trip. The following year I went to Florida three times to be with my son Aaron during his illness.

2. **TITLE VII** claims. **Retaliation** For years I have been subjected to comments from office personal and John Polomino former Operations Location Manager, telling employees to stay away from me that I was nuts and a liar and trouble. Employees would avoid me because they were told to stay away. When I needed assistance with problems with the bus or questions regarding the children I would call over the radio and would get no response many times hearing animal noises answer my calls. It wasn't until my election to shop steward when ballots were anonymous that I realized their reactions towards me were just fear of reprisal or looking for approval from their supervisors. The fear and humiliation I was subjected to was a warning to others.

3. **EEOC Discrimination.** From the date of my hire in 2008 I was only aware of only one other white women operative at the location in New Rochelle where I was reporting, her name is Renee, (operatives are synonymous with drivers). Renee left sometime in 2013. In 2015 I was working out of Mount Vernon and I only knew of one other white female operative at that location and a few white bus monitors, one was Barbara Porier. Barbara told me she too has had her car vandalized, mostly by her tires being slashed. One time I offered to help her change her tire as all the office personnel sat by and laughed at her, Barbara told me she was waiting for her brother to get off of work that he was coming to help. When I asked her to come forward she was too afraid. The following Sept.2015 when I went back to the New Rochelle location there were now two new white women there, one Lisa Skiko and the other Maria Alleotta. Maria never spoke to anyone and Lisa had many problems with her bus too. She also was missing monies from her paychecks which I took up with the Union when I became shop steward. She was never properly compensated at the end of the school year she left First Student. Maria

Alleota quit during the year and then came back a few months later. Although First Students Position Statement to the EEOC complaint claims there were 11 white women working operatives other claims they had made in the 2014 Employer Report were proven to be false.

4. **Pay Practices**. Exception forms, were to be filled out for work performed outside of trips or school runs. In accordance to the CBA for 7 years with the Local 338 there were 4 rates of pay for operatives, one was reg. pay another trip pay, none driver pay and safety meeting pay. Agreement specifically states a driver shall receive their regular rate of pay for all mandatory driving such as performing their route, fueling buses or bringing buses to the garage for repairs. In a short period of time when I was given access to my exception forms, I identified on many forms to be denied, many forms to be paid at non-driver wage which is $8.00 per hr. less pay , non driver pay is lot work or safety meetings and to make it all worse the minute calculations I wrote down were being converted to a unit which is a 100 unit clock for 60 minutes They use 100 unit clock so when the employees put time in for .30 or thirty minutes they are being paid for 17 minutes .

5. **NYLL Part 137**. 137-1.6 (1)(2)(3) **Call In Pay.** When we had safety meetings those meetings were scheduled for times when all the drivers were back from their runs so some of us would have to wait an hour after our shifts for the meetings to beginand hr. and We weren't compensated for the time we spent waiting., We alslo were not compensated for the time spent lin between school runs and trips we weren't compensated for the times spent waiting. Furthermore, the way we were paid was unfair. Specifically, we were paid for the time we were driving the bus, which was recorded via a GPS system called 'Shock Clock.' Shock Clock would record when the bus was moving, and drivers would be compensated accordingly. Because the amount of time Shock Clock recorded was used as the basis for our compensation, we were not compensated for  all the other time we spent working while not driving ( The GPS on the buses or what possibly was Shock Clock, which started our pay when we moved the bus, no reporting to the garage, no walking to the bus, no pre-trip inspection, or the time spent waiting spent while other drivers were in the way of exit). When one of the schools were closed I would only receive pay for the time I spent with that one or two schools not min. 2 hr. reporting times.

6. **NYLL Part 137** , 137-1.7 **Spread hours**.  One hour per day is suppose to be paid for anytime in one day when your hours extend a 10 hr. day even with the split in between. We worked many a day extending into 9:00 pm. When our first school run began at 6:00 am. We were never paid for the extention of time in a day.

7. **NYLL and FLSA Overtime** claims. I was not paid for all of the time I worked. Specifically, I worked overtime during the weeks listed below, and I was not

appropriately compensated for the overtime I worked during those weeks. There is not a clear pattern for when I was properly or improperly compensated for my work. From all the evidence, the creations of different job descriptions nowhere a part of our CBA from Student Charters, Outside Charters and Charters. it is apparent that while some checks overtime is correct many hrs. are placed into different categories in no way part of our bargaining agreement that these offences were intentional. Going back to 2011 checking account to the best of my knowledge these statements show the following weeks were overtime, not to say they were all not paid incorrectly but evidence has shown a pattern. ***The weeks worked at overtime were as follows:***

04/01/11, 04/08/11, 04/15/11, 05/06/11, 05/20/11, 06/03/11, 11/04/11. 02/03/12, 10/26/12, 02/01/13, 02/22/13, 04/12/13, 04/19/13, 05/10/13, 05/17/13, 06/07/13, 06/14/13, 06/21/13, 09/20/13, 09/27/13, 10/04/13, 10/11/13, 10/18/13, 10/25/13, 11/1/13, 10/18/13, 10/25/13, 11/01/13, 11/08/13, 11/15/13, 11/22/13, 11/29/13, 12/20/14, 12/27/14, 01/17/14, 01/24/14, 02/07/14, 01/18/14, 04/11/14.

8. **Unlawful Termination** I was a very good employee and had given everything I had to keep my job through all of the torment. I since have had 4 jobs and am having severe emotional problems because my 24 year old daughter is paying many of my bills, again humiliation. I am broken and honestly feel I will never be the same. I have never been fired from a job before and it hurts, a lot.

**DEMAND IS AS FOLLOWS:**

| | |
|---|---|
| FLMA | $ 10,000.00 |
| TITLE VII | $ 25,000.00 |
| EEOC DISCRIM. | $ 10,000.00 |
| PAY PRACTICES | $ 3,000.00 |
| NYLL CALL IN | $ 2,000.00 |
| NYLL SPREAD | $ 34,000.00 |
| NYLL FLSA OT | $ 5,000.00 |
| UNLAWFUL TER. | $ 55,000.00 |

---
TOTAL $ 144,000.00

Respectfully,

*[signature]*

DORINE R. WATKINS