UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

DORINE R. WATKINS,

Plaintiff,

- against -

FIRST STUDENT, INC.,

Defendant.

_____

No. 17-CV-1519 (CS)

**OPINION & ORDER**

Appearances:

Dorine R. Watkins
Mamaroneck, New York
*Plaintiff Pro Se*

Leslie M. DiBenedetto
Ivan R. Novich
Littler Mendelson, P.C.
Melville, New York
*Counsel for Defendant*

Before the Court is Defendant First Student, Inc.'s Motion to Dismiss. (Doc. 24.) For

the reasons stated below, Defendant's motion is GRANTED, but Plaintiff may amend.

I.      **Background**

The following facts are drawn from Plaintiff's Complaint, (Doc. 1 Ex. A ("Complaint")),

her letter to the Court dated May 17, 2017, requesting leave to amend the Complaint, (Doc. 12

("May 2017 Letter")), her letter to the Court dated June 13, 2017, detailing her demand for each

claim, (Doc. 14 ("Demand Letter")), and her brief opposing Defendant's motion to dismiss,

(Doc. 22 ("P's Mem.")).[1]

Plaintiff Dorine R. Watkins is a White woman who began working as a school bus driver

for Defendant, a student transportation business, in or about January 2009.  (Complaint ¶¶ 2, 3;

May 2017 Letter ¶ 1.)[2]  During the course of her employment, she drove buses and vans and

worked out of New Rochelle, New York and Mount Vernon, New York.  (Complaint ¶¶ 3, 15;

*see* Demand Letter ¶ 3.)  She was also a member of a union, Local 338 (the "Union").

(Complaint ¶ 6.)

A.  Allegations Regarding Defendant's Pay Practices

Plaintiff points to a number of problems with Defendant's pay practices.  First, she

describes a problem with the application of pay rates to certain hours.  The collective bargaining

agreement ("CBA") between Defendant and the Union provided four pay rates for operatives[3]:

regular pay, trip pay, non-driver pay, and safety meeting pay.  (Demand Letter ¶ 4.)  The regular

pay rate applied to mandatory driving tasks such as performing routes, fueling the bus, or

---

[1] "Although courts generally 'may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss,' the mandate 'to read the papers of *pro se* litigants generously makes it appropriate to consider [a] plaintiff's additional materials.'"  *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 6068597, at *1 n.4 (S.D.N.Y. Nov. 15, 2013) (quoting *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997)); *see Morgan v. Ward*, No. 14-CV-7921, 2016 WL 427913, at *7 (S.D.N.Y. Feb. 2, 2016) (considering factual allegations in *pro se* plaintiff's opposition memorandum of law to extent "allegations are consistent with the complaint"); *Braxton v. Nichols*, No. 08-CV-08568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").  The additional allegations, for the most part, provide greater detail as to the circumstances surrounding Plaintiff's potential causes of action.  Thus, the Court will consider the factual allegations contained in Plaintiff's letters to the Court and her brief.

[2]  The Demand Letter alleges that Plaintiff was hired in 2008.  (Demand Letter ¶ 3.)

[3]  "Operative" is synonymous with "driver."  (*See* Demand Letter ¶ 3.)

returning the bus to the garage for repairs.  (*Id.*)  The non-driver pay was "$8.00 per h[ou]r less" and applied to tasks such as performing "lot work" or attending safety meetings.[4]  (*Id.*)

Plaintiff filled out exception forms indicating extra work incurred outside of the regular schedule.  (Complaint ¶ 4; Demand Letter ¶ 4.)  Such work could include spending time in traffic and transporting buses to and from the garage.  (Complaint ¶ 4.)  It is not clear which pay rate applied to work shown on an exception form.  Regardless, Plaintiff noticed some sort of a discrepancy between the hours she worked and her exception forms dating back to when she began working for Defendant, but did not "make a big deal out of it."  (*Id.* ¶ 4.)  Plaintiff also noticed that many of her exception forms were denied and that the non-driver pay rate was applied to her exception form time.  (Demand Letter ¶ 4.)

Plaintiff next takes issue with the lack of compensation for certain time during her workday.  Specifically, she takes issue with not receiving compensation for the time she spent waiting for a safety meeting to begin or waiting between school runs and trips.  (*Id.* ¶ 5.)  She also criticizes the method for counting regular pay time – based on the time the operative's bus was moving according to a GPS system – because it did not include the time spent walking to the bus, inspecting the bus before a trip, or waiting for other drivers to exit the lot.  (*Id.*)  Finally, Plaintiff alleges that she never received an additional hour of compensation for days where she started at 6:00 A.M. and worked until 9:00 P.M.  (*Id.* ¶ 6.)

In or about September 2013, Plaintiff placed a bid to become a "tripper," an assignment that requires availability at all times.  (Complaint ¶ 5.)  Plaintiff does not allege when she became a tripper but her allegations suggest she received the assignment sometime between

_____

[4]  Plaintiff does not explain the differences between regular pay and trip pay or between non-driver pay and safety pay.  She also does not explain what the non-driver pay rate was $8.00 per hour less than.

September 2013 and February 2014.  The demand placed on trippers caused Plaintiff to work many overtime hours.  (*Id.*)  Early in the school year, Plaintiff noticed that she was not receiving the correct compensation for her overtime hours – many of the hours were "going into categories not known to [Plaintiff], [and] being paid at many different rates of pay."  (*Id.*)  The May 2017 Letter identifies four workweeks – specifically, "12/15/13, 01/05/14, 01/12/14,-1/26/14" – in which Plaintiff worked more than 40 hours but was not paid overtime wages.  (May 2017 Letter ¶ 4.)  And the Demand Letter identifies another 36 workweeks – different from those alleged in the May 2017 Letter – in which Plaintiff "was not appropriately compensated for [her] overtime."  (Demand Letter ¶ 7.)  Plaintiff identified those 36 workweeks based on a review of her checking account.  (*Id.*)

She broached the issue of overtime pay with John Polomino, the operations manager, but he would tell her that her pay was correct.  (Complaint ¶ 5.)  Plaintiff also complained to her union representative, Christine Ciprianno, about the discrepancies in her pay, and Ciprianno would tell Plaintiff that she would speak to Polomino.  (*Id.* ¶ 6.)  And then, days later, either Polomino or Ciprianno would tell Plaintiff that her pay was correct.  (*Id.*)  In February 2014, Plaintiff went to the New York State Department of Labor ("NYSDOL") in White Plains, New York for help, only to find that the Department could not do anything because she was represented by a union.  (*Id.* ¶ 7.)  Plaintiff does not specify when she spoke with Polomino or Ciprianno but it is reasonable to infer that these conversations occurred between September 2013 (when she placed the bid to become a tripper) and February 2014 (when she went to the NYSDOL).

Shortly thereafter, Plaintiff's hours were reduced drastically and her bus was denied necessary repairs.  (*Id.* ¶ 8.)  In or about February 2014, Plaintiff was asked to cover what are

known as "shapper runs," which were usually done by experienced drivers that have basic knowledge of all of the runs. (*Id.*) Shapper run drivers were paid a flat salary for 35-40 hours per week. (*Id.*) Plaintiff was forced to perform these duties for 25-30 hours per week and was assigned only a few trips. (*Id.*) For unspecified safety reasons, Plaintiff returned to a "regular run of 23 hours [per week]." (*Id.*)

Plaintiff says she called Defendant 200 times and Ciprianno 30 times asking to file a grievance, to no avail. (*Id.* ¶ 9.) In or about March 2014, Plaintiff filed some sort of charges against the Union and the Defendant. (*Id.* ¶ 10.)[5] Three months into the investigation of Plaintiff's charges, the field investigator asked Plaintiff to drop her charges because the government would not take her case any further. (*Id.* ¶ 12.) Plaintiff eventually filed complaints with the National Labor Relations Board ("NLRB") in April 2014 and September 2014 alleging improper payment of overtime wages. (P's Mem. at 2-3.)

B. Allegations of FMLA Violations, Discrimination, and Hostile Work Environment

In May 2014, Plaintiff "begged and pleaded" with Defendant for leave time to be with her sons, both of whom were set to have surgery in Florida. (Complaint ¶ 13; May 2017 Letter ¶ 3.) Polomino denied the request for leave and told Plaintiff that there was no one to cover her runs. (Demand Letter ¶ 1; May 2017 Letter ¶ 3.)

That same month, on May 20, 2014, the fuel tank of Plaintiff's bus was punctured. (Complaint ¶ 13.) She was on her way to pick up students for an extracurricular activity when she noticed the bus had no fuel. (*Id.*) After refueling, she picked up the students and drove them to their activity. (*Id.*) While she was waiting for the students to return, a bystander told her that the bus was leaking fuel. (*Id.*) She confirmed the leak, and called the "go-to person," Nathaniel

---

[5] The Complaint does not specify with whom Plaintiff filed the March 2014 charges.

Martin, to let him know, but he told her that nobody was going to bring her another bus. (*Id.*; *see* P's Mem. at 3.)[6] As a result, she drove the bus back, students and all, even though the fuel tank had a leak. (Complaint ¶ 13.) She reported the issue to Defendant later that evening but Defendant was dismissive and failed to take any action. (P's Mem. at 2.) Defendant instead claimed that the problem was an overflow of antifreeze. (Complaint ¶ 13.)

In October 2014, Plaintiff began helping Stan Outerbridge start up the vehicles every morning. (*Id.* ¶ 15; May 2017 Letter ¶ 1a.) When Defendant learned that Plaintiff was helping Outerbridge, an unidentified lot worker began to lock the doors of many of the vehicles, forcing Plaintiff to access them from the back. (Complaint ¶ 15; May 2017 Letter ¶ 1a.)

Plaintiff was also driving a van around that time, in the fall of 2014. (*See* May 2017 Letter ¶ 1b (discussing pre-trip inspections of Plaintiff's van).) Plaintiff alleges that the bus monitor for Plaintiff's van was "insane" and threatened Plaintiff. (Complaint ¶ 15.)[7] During the colder months – about November 2014 through February 2015 – someone would move Plaintiff's van without her knowing, thus causing her to walk all over trying to find it. (*Id.*; May 2017 Letter ¶ 1b.) Plaintiff alleges that Defendant had the van moved but she does not identify who moved it. (May 2017 Letter ¶ 1b.) Someone also wrote "complainer" in the dust on the back of Plaintiff's van in or around January 2015 and again in the spring of 2015. (*Id.* ¶ 1f; *see* Complaint ¶ 16.) At another unspecified time, someone urinated in the water bottle that Plaintiff stored in her van, and Plaintiff accidentally drank from the bottle. (Complaint ¶ 17.)

Plaintiff was reprimanded ten minutes before a mandatory physical in 2014. (*Id.* ¶ 18.) In 2015, the safety manager sent her for a drug test thirty minutes before a mandatory physical,

---

[6] Plaintiff's brief identifies "Nathaniel Martin a/k/a Martin" as an employee of Defendant. (P's Mem. at 3.)

[7] The bus monitor was eventually fired because a parent complained about her behavior. (*Id.*)

causing her to experience stress about possibly missing the physical.  (*Id.*; May 2017 Letter ¶ 1g.)

On April 23, 2015, Plaintiff picked up her son from a hospital in Florida.  (Complaint ¶ 19.)  He was seriously ill and Defendant was aware of his condition because the Florida hospital had sent an email or fax to Defendant's office.  (*Id.*)

On May 7, 2015, an unidentified employee crashed a bus into Plaintiff's car while it was located in front of Defendant's premises.  (*Id.* ¶ 20; May 2017 Letter ¶ 1d.)[8]  Plaintiff first learned of the crash the next day when Vincent Carpenter, an employee of Defendant, asked Plaintiff if she had seen the damage to her car.  (Complaint ¶ 20.)  Plaintiff inspected the damage and spoke to the safety manager, who refused to acknowledge that a school bus had caused the damage despite the yellow paint all over the car's bumper.  (*Id.*)  Carpenter agreed to give a witness statement but he did not provide Plaintiff with the form until a union representative arrived.  (*Id.*)  The accident report listed the driver as unknown and changed the time from 6:15 to 7:00 even though Carpenter was very clear as to the time.[9]  (*Id.*)  Plaintiff believes that someone changed the time in the report because few people drive at that time.  (*Id.*)  Plaintiff also believes that Zonar, a tracking device installed in all of the vans and buses, could have identified the driver of the bus that crashed into her car.  (*Id.*)  At an unspecified time, three unidentified men threatened Carpenter to keep his mouth shut and then, a few months later, a bus hit his car.  (*Id.*)

Plaintiff alleges that for years Polomino told employees to stay away from her because he thought she was "nuts," "a liar," and "trouble."  (Demand Letter ¶ 2.)  Plaintiff also alleges that

---

[8] This was about the time that Plaintiff's father underwent heart surgery.  (Complaint ¶ 20.)

[9] The Complaint does not specify whether the person who completed the accident report was the union representative or Carpenter.  Nor does the Complaint specify whether the accident occurred at morning or at night.

Polomino, on unspecified occasions, whited out, denied, or refused to pay Plaintiff based on exception forms related to trips she made to and from Mount Vernon. (Complaint ¶ 14.)

At some point in 2015, Plaintiff filed at least one complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 23; May 2017 Letter ¶ 2.) The Complaint refers to an EEOC complaint for discrimination and retaliation filed in September 2015, while the May 2017 Letter says Plaintiff reported a hostile work environment to the EEOC in July 2015. (Complaint ¶ 23; May 2017 Letter ¶ 2.) Plaintiff believes that 22 of her buses were intentionally disabled by an unidentified representative of Defendant during the period September 2015 to September 2016. (Complaint ¶ 25; May 2017 Letter ¶ 2j.) The defects with the buses ran the gamut from brakes locking up, smoke filling the bus, and brakes catching on fire to bald tires, slashed tires, and sliced windshield wipers. (Complaint ¶ 25; May 2017 Letter ¶ 2j.) Plaintiff also alleges that on September 3, 2015, Russel Robinson, a lot worker from Mount Vernon, used his car to block in Plaintiff's bus, preventing Plaintiff from going on her run. (Complaint ¶ 21; May 2017 Letter ¶ 2h.) Two weeks later, on September 17, 2015, Robinson tried to run over Plaintiff with his car. (Complaint ¶ 22; May 2017 Letter ¶ 2i.) A complaint was filed with the New Rochelle Police Department. (Complaint ¶ 22; May 2017 Letter ¶ 2i.)

C. Grievance About Irregular Pay Goes Unanswered

In February 2016, Plaintiff's peers elected her to represent them as shop steward for the Union. (Complaint ¶¶ 24, 26.) The Complaint alleges that the Union ignored requests to meet about pay practices, (*id.* ¶ 24), but Polomino and Martin did meet with the Union to discuss irregular pay practices in May 2016, (P's Mem. at 3). Plaintiff alleges that she made her grievances known to Polomino and Martin at these meetings. (*Id.*) Some employees filed a grievance regarding some of the pay practices but it is not clear if this grievance was sent to the

Union or to Defendant. (*Id.*) Plaintiff alleges the grievance was ignored – five months passed and nothing was done. (Complaint ¶ 24.) Pursuant to the CBA, it takes about 40 days before a grievance goes to arbitration. (*Id.*)

In or about September 2016, Plaintiff, in her role as shop steward, explained to the Union representative that the employees need representation and the Union was not providing it. (*Id.* ¶ 26.) Plaintiff was then relieved of her duties as shop steward. (*Id.*) In September 2016, Plaintiff filed unspecified charges with the National Labor Relations Board ("NLRB") against the Union. (*Id.* ¶ 27.)

### D. The Experience of Other White, Female Employees

When Plaintiff was first stationed in New Rochelle, she was aware of only one other White, female operative at that location, a woman named Renee. (Demand Letter ¶ 3.) Renee left sometime in 2013. (*Id.*) While Plaintiff was working out of Mount Vernon in 2015, Barbara Porier was the only White, female operative of whom Plaintiff was aware. (*Id.*) Porier told Plaintiff that her car was vandalized and someone slashed her tires. (*Id.*) According to Plaintiff, office personnel sat by and laughed at Porier while Plaintiff helped Porier change her tires. (*Id.*)

When Plaintiff returned to the New Rochelle location in September 2015, there were two new White, female employees: Lisa Skiko and Maria Alleotta. (*Id.*) Alleotta never spoke to anyone, quit during the school year, and came back a few months later. (*Id.*) Skiko experienced many problems with her bus and was also missing money from her paychecks, an issue Plaintiff took up with the Union when Plaintiff became shop steward. (*Id.*) Skiko was never properly compensated and at the end of the school year stopped working for Defendant. (*Id.*)

E.  <u>Plaintiff's Termination</u>

On September 27, 2016, while students were on the bus, the door to Plaintiff's bus would not close.  (Complaint ¶ 28.)  Plaintiff called Defendant and Maria Poleski, the Harrison Transportation Director, but nobody answered her calls.  (*Id.*)  The doors eventually closed and Plaintiff brought the students to school.  (*Id.*)  Plaintiff then called Polomino to tell him that he was playing a "very dangerous game" and to inform him that someone needed to cover her run because she was going to visit Poleski.  (*Id.*; May 2017 Letter ¶ 2q.)  Plaintiff then went to Poleksi and told her what was going on.  (Complaint ¶ 28.)  While Plaintiff was in Poleski's office, Polomino called Poleski and told her that Plaintiff had had a psychotic breakdown and abandoned her bus.  (*Id.*)  At the time of Polomino's call, Plaintiff's bus was sitting in front of the middle school where Poleski's office is located.  (*Id.*)  Polomino fired Plaintiff later that day. (*Id.*)

F.  <u>Procedural History</u>

Plaintiff filed this action in state court on November 1, 2016, (Complaint at 1), and Defendant removed the case on February 28, 2017, (Doc. 1).  The Complaint alleges that Plaintiff was the subject of sabotage and retaliation and that she lost income through illegal pay practices.  (Complaint ¶¶ 29, 31.)

Defendant sent a letter requesting a pre-motion conference on May 5, 2017, (Doc. 9), and Plaintiff responded by letter dated May 17, 2017, (May 2017 Letter).  Plaintiff requested leave to amend the Complaint to remedy certain problems pointed out in Defendant's pre-motion conference letter.  (*Id.* at 1.)  On June 6, 2017, the Court held a pre-motion conference.  (Minute Entry dated June 6, 2017.)  At the pre-motion conference, the Court granted Plaintiff the opportunity to file an amended complaint by June 27, 2017 and referred Plaintiff to the Southern

District of New York's *pro se* legal clinic. Plaintiff did not follow through on filing an amended complaint, (Doc. 16), so Defendant moved to dismiss the original complaint, (Doc. 24).

## II.    Legal Standard

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (emphasis and internal quotation marks omitted),[10] and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted). Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss. *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 153 (S.D.N.Y. 2011) (citing *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)). The plausibility standard announced by the Supreme Court in *Iqbal* and *Twombly* applies to motions to dismiss based on statutes of limitations, *see George v. Strayhorn*, No. 11-CV-3701, 2014 WL 1259613, at *2 (S.D.N.Y. Mar. 24, 2014), and "the Court can only grant a motion to dismiss based on statute of limitations grounds if there is no factual question as to whether the alleged violations occurred within the statutory period," *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 369 (E.D.N.Y. 2012).

## III. Discussion

Although the Complaint does not specify particular claims, Plaintiff appears to have consented to, and the Court agrees with, Defendant's grouping of the claims into four categories: (1) claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New

---

[10] The Court will send Plaintiff copies of all unpublished opinions cited in this ruling.

York Labor Law, N.Y. Lab. Law § 190 *et seq.* ("NYLL"); (2) claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); (3) claims under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA"); and (4) claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"). (*See* May 2017 Letter (referring to hostile work environment, retaliation, FMLA, FLSA, and NYLL claims); Demand Letter (same); P's Mem. at 2-3 (referring to retaliation after filing NLRB complaint).)

Defendant moves to dismiss all of the potential claims as either time-barred or insufficiently pleaded. (Doc. 25 at 1-2, 6-14.) Plaintiff, in response, asserts additional factual allegations but makes no legal arguments. (*See* P's Mem.) She also asks the Court to treat these additional facts as a supplement to her "amended complaint," to construe her allegations liberally, to reject Defendant's arguments for dismissal, and to allow her to amend if the Court accepts Defendant's arguments. (*Id.* at 1, 4.)

Defendant responds that all of Plaintiff's claims should be dismissed because she abandoned them by opposing its motion without making legal arguments. (Doc. 23 at 1-3.) Although Defendant cites two cases for support, the plaintiffs in those cases were represented by counsel. *See Silverman v. Household Fin. Realty Corp. of N.Y.*, 979 F. Supp. 2d 313, 315, 317 (E.D.N.Y. 2013) (claims of plaintiff with counsel deemed abandoned where plaintiff failed to defend them in opposition to motion to dismiss); *Volunteer Fire Ass'n of Tappan, Inc. v. Cty. of Rockland*, No. 09-CV-4622, 2010 WL 4968247, at *6, 7 (S.D.N.Y. Nov. 24, 2010) (same). Because Plaintiff here is *pro se*, the Court will instead address Defendant's other arguments for dismissal and the strongest arguments that Plaintiff's allegations suggest.

A.  FLSA and NYLL Claims

Plaintiff alleges facts that might suggest four claims under the FLSA and the NYLL:  (1) unpaid overtime; (2) retaliation; (3) unpaid spread-of-hours pay; and (4) unpaid waiting time.[11] Before addressing the sufficiency of the pleadings for each of these claims, the Court will address an issue applicable to all of them:  the statute of limitations.

1.  *Statute of Limitations*

The statute of limitations under the FLSA is two years, and three years if the violation is willful.  29 U.S.C. § 255(a).  The statute of limitations under the NYLL is six years, with no showing of willfulness required.  N.Y. Lab. Law §§ 198(3), 663(3).  A willful FLSA violation occurs if the employer "'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by'" the FLSA.  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)).  Conclusory allegations of willfulness are insufficient.  *See Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310, 2016 WL 1359218, at *5 (E.D.N.Y. Mar. 17, 2016), *adopted by*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016); *Day An Zhang v. L.G. Apparel Inc.*, No. 09-CV-3240, 2011 WL 900183, at *4 (E.D.N.Y. Feb. 18, 2011), *adopted by*, 2011 WL 900950 (E.D.N.Y. Mar. 15, 2011).[12]

Plaintiff has failed to plead sufficient facts to render plausible the conclusion that Defendant acted willfully.  Her only allegation comes in the May 2017 Letter, which assumes

[11] Because these are claims to enforce statutorily-conferred rights, distinct from contractual rights granted under the CBA, they are not precluded by the Labor Management Relations Act ("LMRA"), as Defendant claims.  *See Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 134-35 (E.D.N.Y. 2011).

[12] Other courts in this circuit have accepted general averments of willfulness at the pleadings stage.  *See, e.g.*, *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 192 (E.D.N.Y. 2015); *Litras v. PVM Int'l Corp.*, No. 11-CV-5695, 2013 WL 4118482, at *5 (E.D.N.Y. Aug. 15, 2013) (collecting cases); *see also Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am.*, 896 F. Supp. 2d 198, 206 n.6 (E.D.N.Y. 2012) ("'Malice, intent, knowledge, and other

that the FLSA's three-year statute of limitations applies and states that discovery "will show the carefully calculated and deliberate ways" Defendant tried to harm Plaintiff. (May 2017 Letter ¶ 4.) But under *Iqbal*, plausibility "must come *before* discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012) (emphasis in original). Absent sufficient allegations of willfulness, the two-year statute of limitations applies. Because Plaintiff filed her Complaint on November 21, 2016, her FLSA claims are timely if they accrued after November 21, 2014 and her NYLL claims are timely if they accrued after November 21, 2010.

### 2. *Unpaid Overtime*

Under both the FLSA and the NYLL, an employer must compensate an employee for work that is in excess of 40 hours per week "at a rate not less than one and one-half times the regular rate at which [s]he is employed." 29 U.S.C. § 207(a)(1); *see* 12 N.Y.C.R.R. § 142-2.2.[13] For an unpaid overtime claim to survive a motion to dismiss, plaintiffs "must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare*

---

conditions of a person's mind may be alleged generally.'") (quoting Fed. R. Civ. P. 9(b)). This path, however, is a departure from *Iqbal*. The Supreme Court explained:

> "[G]enerally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading . . . intent under an elevated pleading standard. It does not give h[er] license to evade the less rigid – though still operative – strictures of Rule 8. And Rule 8 does not empower [a plaintiff] to plead the bare elements of h[er] cause of action, affix the label "general allegation," and expect h[er] complaint to survive a motion to dismiss.

*Iqbal*, 556 U.S. at 686-87 (citation omitted); *see Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 921 (D. Ariz. 2010) (allegations of willfulness insufficient where complaint stated, without elaboration, that Defendant "intentionally, willfully, and repeatedly" violated FLSA) (internal quotation marks omitted). Thus, the Court declines to accept a general averment of willfulness.

[13] The Court analyzes the federal and state unpaid overtime claims together. *See, e.g.*, *Michel v. Petco Animal Supplies Stores, Inc.*, No. 16-CV-1838, 2017 WL 2198962, at *3 (E.D.N.Y. May 18, 2017) ("[C]ourts analyzing NYLL overtime claims have applied the same analysis used to evaluate FLSA overtime claims due to the substantial similarity in their provisions.").

*Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). Allegations that the plaintiff "typically," "occasionally," or "often" worked certain shifts or missed certain breaks do not suffice because such allegations "invite[] speculation." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114-15 (2d Cir. 2013). Moreover, it is inadequate to "track[] the statutory language of the FLSA, lifting its numbers and rehashing its formulation, [while] alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013).

Plaintiff identifies four workweeks ranging from December 2013 to January 2014 where she "worked more than 40 hours but was not paid overtime wages," (May 2017 Letter ¶ 4), and another 36 workweeks ranging from April 2011 to April 2014 where she "was not appropriately compensated for the overtime [she] worked," (Demand Letter ¶ 7). While a NYLL unpaid overtime claim based on those workweeks is timely, a parallel FLSA claim is barred by the two-year statute of limitations. But even if the FLSA's three-year statute of limitations applied, Plaintiff would still be unable to sustain an FLSA unpaid overtime claim because her unpaid overtime allegations are insufficient. And for the same reason, she cannot sustain her timely NYLL unpaid overtime claim.

The Complaint's lone allegation – Plaintiff "noticed [her] overtime hours were not being paid properly," (Complaint ¶ 5) – lacks the specificity required at this stage of the litigation. *See Nakahata*, 723 F.3d at 201 (affirming dismissal of FLSA overtime claim where plaintiffs "merely alleged that they were not paid for overtime hours worked"). And the May 2017 Letter, although it identifies specific workweeks where Plaintiff "worked more than 40 hours but was not paid overtime wages," simply tracks the statutory language without offering any facts that support the conclusion that Plaintiff was owed overtime wages. (May 2017 Letter ¶ 4.) The

same absence of factual specifics is found in the Demand Letter.  (Demand Letter ¶ 7.)  In short, Plaintiff must provide more detail.  *See Johnson v. Equinox Holdings, Inc.*, No. 13-CV-6313, 2014 WL 3058438, at *4 (S.D.N.Y. July 2, 2014) (dismissing FLSA overtime claim where plaintiff failed to "identify . . . the weeks during which he worked more than forty hours [and] the specific number of hours he worked during such weeks"); *Bustillos v. Acad. Bus, LLC*, No. 13-CV-565, 2014 WL 116012, at *3 (S.D.N.Y. Jan. 13, 2014) (finding conclusory allegation that plaintiff "would regularly work . . . 60 to 90 hours per week").  She does not describe the number of days that she worked in the identified workweeks, the length of the shifts, whether she was required to arrive early or leave late, or whether she worked through breaks.  *Cf. Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 497 (S.D.N.Y. 2016) (finding that *pro se* plaintiff stated plausible FLSA overtime claim where plaintiff described length of shift he always worked, number of days he worked, and directive that required him to arrive to work early).  Nor does she provide enough information – such as hours worked, rate of pay, and income earned – for the Court to do the math and conclude that she plausibly was not compensated for overtime.  *Cf. Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 421 (S.D.N.Y. 2017) (finding *pro se* plaintiff stated plausible FLSA overtime claim by providing "estimate of her earnings, her hourly rates, [and] her dates of employment, and [also alleging] that she only took one week off during the course of her employment"), *appeal withdrawn per stipulation*, No. 17-2490, 2017 WL 7532583 (2d Cir. Dec. 6, 2017).

The closest Plaintiff comes to describing a shift that she worked is in her Demand Letter, where she states that she worked days that extended beyond ten hours, beginning at 6:00 A.M. and ending at 9:00 P.M with a "split in between."  (Demand Letter ¶ 6.)  But she fails to mention how many hours she actually worked during that shift or how often she worked that shift.

Moreover, the split to which Plaintiff alludes suggests a gap of time when Plaintiff was not working. (*Id.*) In sum, Plaintiff, has not offered enough detail to plausibly allege that she worked more than forty hours in a given workweek and was not paid time-and-a-half for the hours over forty. Accordingly, her overtime claims are dismissed.

### 3. *FLSA and NYLL Retaliation*

Both the FLSA and the NYLL make it unlawful to retaliate against an employee because she engaged in protected activity. *See* 29 U.S.C. § 215(a)(3) (unlawful for employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]"); N.Y. Lab. L. § 215(1)(a) (unlawful for employer to "discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates [the NYLL]").[14]

To establish a *prima facie* case, a plaintiff must show "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins*, 626 F.3d at 53. The protected activity need not be a formal complaint: "an employee may premise a[n] [FLSA or NYLL] retaliation action on an oral complaint made to an employer, so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir.

---

[14] Because "the standards for stating a claim for retaliation under the FLSA and the [NYLL] significantly overlap," *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (citing *Mullins v. City of N.Y.*, 626 F.3d 47 (2d Cir. 2010) (FLSA standard) and *Higueros v. N.Y. State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) (NYLL standard)), the Court will analyze the claims together.

2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). Courts interpreting this standard have held that the protected complaint must allege that the employer is engaged in a violation. *See Dunn v. Sederakis*, 143 F. Supp. 3d 102, 112 (S.D.N.Y. 2015) (collecting cases).

As discussed above, Plaintiff raised the issue of discrepancies in her overtime pay with Polomino, and then, shortly after, her hours were reduced and her bus was denied necessary repairs. (Complaint ¶¶ 5-8.)[15] This means that any potential FLSA or NYLL retaliation claim accrued by February 2014, which is when Plaintiff's hours were reduced, (*see id.* ¶ 8). *See Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 405 (E.D.N.Y. 2015) (FLSA retaliation claim accrued on date of allegedly retaliatory action). Thus, Plaintiff's FLSA retaliation claim is time-barred absent allegations plausibly suggesting Defendant knew what it was doing violated the FLSA or recklessly disregarded that possibility, but her NYLL retaliation claim is timely.

Even if the FLSA retaliation claim were timely, Plaintiff does not assert facts plausibly suggesting that she engaged in protected activity. She alleges she informed Polomino that she "noticed [her] overtime hours were not being paid properly, many going into categories not known to [her], [and] being paid at many different rates of pay." (Complaint ¶ 5; *see id.* ¶ 6).[16] But her Complaint and her letters do not allege that she provided Polomino with a basis for him to infer that she was claiming an FLSA or NYLL violation, as opposed to expressing that she did

---

[15] Although Plaintiff also contacted NYSDOL about the purported discrepancies, she does not allege that Defendant was aware of that contact, so she cannot sustain a retaliation claim based on that protected activity. Thus, the Court treats Plaintiff's contact with Polomino as the operative activity for any potential FLSA or NYLL retaliation claim.

[16] Whether a plaintiff utters the words "FLSA violation" or "overtime" in a complaint to an employer does not drive the analysis. *See Sydney v. Time Warner Entm't-Advance/Newhouse P'ship*, No. 13-CV-286, 2017 WL 1167284, at *8 (N.D.N.Y. Mar. 28, 2017) ("Plaintiffs need not complain that Defendant acted illegally . . . . [but] there would be no basis for the listener to infer that [Plaintiff's] opaque and explicated reference to 'overtime' was meant to claim a violation of the FLSA.") (internal quotation marks omitted), *appeal filed*, No. 17-1219 (2d Cir. Apr. 26, 2017). Thus, the Court will not dwell on Plaintiff saying "overtime" but not "FLSA violation" to her employer.

not understand her overtime pay or flagging a potential clerical error. *See Baguidy v. Boro Transit Inc.*, No. 16-CV-3096, 2017 WL 4443476, at *11 (E.D.N.Y. Sept. 30, 2017) (dismissing FLSA retaliation claim where Plaintiff did not explain disparate treatment or provide payroll manager "with sufficient information to understand that Plaintiff was complaining of anything more than a clerical error in his paycheck"), *appeal dismissed*, No. 17-3431 (Dec. 14, 2017). Plaintiff's allegations paint a picture of an employee who approached her employer about her pay because she did not understand or could not reconcile her payroll stubs. There is no indication that Plaintiff said anything to Polomino so as to put him on notice that she was alleging a potential FLSA or NYLL violation. Because Plaintiff has not alleged that she made a "clear articulation of facts indicative of illegality" to Polomino, *Dunn*, 143 F. Supp. 3d at 113, her FLSA and NYLL retaliation claims are dismissed.

### 4. *Spread-of-Hours*

Pursuant to the NYLL, an employee is entitled to "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . for any day in which . . . the spread of hours exceeds 10 hours," 12 N.Y.C.R.R. § 142-2.4(a), with the "spread of hours" referring to "the interval between the beginning and end of an employee's workday," *id.* § 142-2.18. The NYSDOL has interpreted the "spread of hours provision as applying only to employees earning minimum wage," *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 369 (S.D.N.Y. 2012) (internal quotation marks omitted), and "[t]he majority of district courts in this circuit are in accord with the [NYSDOL's] position that those earning more than

the minimum wage are not entitled to spread-of-hours pay," *Singh v. Patel*, No. 12-CV-3204, 2013 WL 2190153, at *2 (E.D.N.Y. May 16, 2013) (internal quotation marks omitted).

The Demand Letter offers the lone allegation suggesting a spread-of-hours claim: Plaintiff and other operatives "worked many a day extending into 9:00 pm . . . when [their] first school run began at 6:00 am."  (Demand Letter ¶ 6.)  Because Plaintiff has not alleged that she earned the minimum wage (and she apparently earned significantly more, (*see id.* ¶ 4)), her spread-of-hours claim fails.  Further, Plaintiff failed to specify when she worked days that exceeded ten hours, also warranting dismissal.  *See Hinckley v. Seagate Hosp. Grp., LLC*, No. 16-CV-6118, 2016 WL 6524314, at *10 (W.D.N.Y. Nov. 3, 2016) (dismissing spread-of-hours claim where plaintiff "fail[ed] to identify any actual instance when Defendants failed to pay him for a spread-of-hours situation").

### 5. *Unpaid Waiting Time*

Plaintiff appears to allege that certain periods of waiting time should be compensable and identifies this as a violation of "NYLL Part 137.  137-1.6 (1)(2)(3) Call In Pay."  (Demand Letter ¶ 5.)  The relevant New York call-in pay regulation provides that "[a]n employee who by request or permission of the employer reports for work on any day shall be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage."  12 N.Y.C.R.R. § 142-2.3.  Plaintiff does not, however, allege that Defendant ever called her in to work and paid her less than the required amount.

Plaintiff also fails to state an FLSA waiting time claim.  "Whether waiting time is time worked under the [FLSA] depends upon particular circumstances," such as "the nature of the service, and its relation to the waiting time."  29 C.F.R. § 785.14; *see Lassen v. Hoyt Livery, Inc.*, 120 F. Supp. 3d 165, 175 (D. Conn. 2015).  "The relevant inquiry is not whether [an employee's]

duties prevented [her] from engaging in any and all personal activities during waiting time; rather it is whether the time is spent predominantly for the employer's benefit or the employee's." *Lassen*, 120 F. Supp. 3d at 176 (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)). Plaintiff here does not specify the length of any waiting time, whether she was required to wait at work, whether she had to remain ready for unexpected assignments, or any other facts that would plausibly suggest that the waiting time was predominantly for Defendant's benefit, not Plaintiff's. *Id.* at 176-77 (denying employer's motion for summary judgment where record evidence showed that limousine drivers were required to spend waiting time in close proximity to their vehicles, dressed in uniform, ready to take on unexpected assignments, and unable to use their vehicles for personal use, as well as explaining certain constraints that prevented drivers from using waiting time effectively for their own purposes). She has thus not plausibly alleged a waiting time claim.[17]

Any claims based on call-in pay or waiting time are dismissed.

B. FMLA Claims

The FMLA entitles "eligible employee[s]" to twelve weeks of unpaid leave per year for certain family emergencies. 29 U.S.C. § 2612(a)(1). "The Second Circuit recognizes two types of claims under the FMLA, interference and retaliation." *Shark v. City of N.Y.*, No. 03-CV-2616, 2008 WL 4444122, at *4 n.2 (S.D.N.Y. Sept. 29, 2008) (citing *Potenza v. City of N.Y.*, 365 F.3d 165, 167-68 (2d Cir. 2004)). Plaintiff seems to assert both types of claims.

Plaintiff's FMLA interference claim stems from her May 2014 request for leave to be with her sons, both of whom were set to have surgery in Florida. (Complaint ¶ 13; May 2017

---

[17] Further, because Plaintiff does not specify the dates, or approximate dates, when she was called in but underpaid, or required to wait, there is no way to discern if these claims are time-barred.

Letter ¶ 3.)  She alleges that Polomino denied this request, citing the unavailability of anyone to cover for her.  (May 2017 Letter ¶ 3; Demand Letter ¶ 1.)  Defendant attempts to defeat this claim first by arguing that the alleged conduct occurred before November 23, 2014 – two years before Plaintiff filed her complaint.  *See* 29 U.S.C. § 2617(c)(1) (providing two-year statute of limitations for FMLA claims).  The limitations period, however, extends to three years if the violation is "willful."  *See id.* § 2617(c)(2) (providing three-year statute of limitations for FMLA claims where alleged violation is willful).  Plaintiff attempts to benefit from the three-year limitations period, but fails to plead sufficient facts for the Court to deem Defendant's actions a willful violation of the FMLA.  *See, e.g.*, *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 54 (2d Cir. 2017) (summary order) (FMLA claim that fails to plausibly allege willful violation is subject to two-year statute of limitations); *Mitchell v. N.Y.C. Police Dep't*, No. 10-CV-3201, 2010 WL 5313531, at *3 (E.D.N.Y. Dec. 17, 2010) (dismissing FMLA claim where allegations lacked sufficient specificity to determine whether defendant's actions could be deemed willful FMLA violation).  Plaintiff alleges that "[t]he failure to provide [Plaintiff] with leave to be with [her] sick sons was clearly a willful violation of the FMLA," (May 2017 Letter ¶ 3), but does not explain how that denial constitutes a willful violation.  Thus, the two-year limitations period applies, making her FMLA interference claim – based on conduct in May 2014 – time-barred because the claim accrued before November 21, 2014.

Even if the Court applied the three-year limitations period, Plaintiff would be unable to sustain an FMLA claim because her allegations are deficient.  To state an interference claim, a plaintiff must adequately plead:  "(1) that [s]he is an eligible employee under the FMLA; (2) that the defendant is an employer as defined in the FMLA; (3) that [s]he was entitled to leave under the FMLA; (4) that [s]he gave notice to the defendant of h[er] intention to take leave; and (5) that

[s]he was denied benefits to which [s]he was entitled under the FMLA." *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011). "[T]o be eligible for FMLA benefits, an employee must have been employed for at least twelve months with an employer and have worked at least 1,250 hours in the twelve months preceding the date on which eligibility is determined." *Woodford v. Cmty. Action of Greene Cty., Inc.*, 268 F.3d 51, 54 (2d Cir. 2001) (citing 29 U.S.C. § 2611(2)(A)). The FMLA defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). "Eligibility is a threshold issue, and it is insufficient for [a] [p]laintiff to merely assert in a conclusory manner that [s]he is eligible without stating any facts that relate to the definition of an eligible employee." *Smith*, 769 F. Supp. 2d at 465 (alterations and internal quotation marks omitted).

Plaintiff cannot sustain an FMLA interference action because she has not alleged any facts indicating that she was an eligible employee or that Defendant was an employer as defined by the FMLA.[18] Accordingly, Plaintiff's interference claim is dismissed. *See, e.g.*, *Diby v. Kepco Inc.*, No. 16-CV-583, 2016 WL 5879595, at *3-4 (E.D.N.Y. Oct. 7, 2016) (dismissing FMLA interference claim for, among other reasons, failure to provide facts establishing that plaintiff was eligible employee and defendant was employer subject to FMLA requirements); *Vicioso v. Pisa Bros.*, No. 98-CV-2027, 1998 WL 355415, at *2 (S.D.N.Y. July 1, 1998) (same).

Nor has Plaintiff sufficiently alleged that she would be entitled to FMLA leave even assuming she were an eligible employee. While an eligible employee may be entitled to leave to

---

[18] Besides stating that her request for time off was denied because of lack of coverage, the only other allegation she provides to support her claim is that she could afford the trip to Florida, (Demand Letter ¶ 1), a fact that is irrelevant to the analysis.

care for a son or daughter with a serious health condition, 29 U.S.C. § 2612(a)(1)(C), and while surgery may be such a condition, *see id.* § 2611(11), "son or daughter" is defined to include only children under 18 years old or incapable of self-care because of a mental or physical disability, *see id.* § 2611(12)(A)-(B). Plaintiff has not alleged that either of her sons were less than 18 years old when she requested leave. And although Plaintiff alleges that she has a disabled son at home, (Complaint ¶ 30), she does not specify if that son is one of the ones she wanted to visit in Florida or if either of her sons were incapable of self-care because of a mental or physical disability when she requested leave. Thus, she has not pleaded a plausible FMLA claim. *See Milne v. Navigant Consulting*, No. 08-CV-8964, 2010 WL 4456853, at *9 (S.D.N.Y. Oct. 27, 2010) (dismissing FMLA entitlement claim where plaintiff failed to sufficiently plead son or daughter had "serious health condition").

Plaintiff's inability to establish that she was entitled to FMLA leave also prevents her from asserting an FMLA retaliation claim. To state such a claim, a plaintiff must plausibly allege that "[s]he exercised rights protected under the FMLA . . . [and] suffered an adverse employment action . . . under circumstances giving rise to an inference of retaliatory intent." *Smith*, 769 F. Supp. 2d at 469. "In order for a plaintiff to 'exercise rights protected under the FMLA,' the plaintiff must demonstrate she actually has a valid claim to FMLA benefits." *Milne*, 2010 WL 4456853, at *10 n.19; *see Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 194 (S.D.N.Y. 2011) (entitlement to FMLA leave is "necessary predicate" to FMLA retaliation claim); *see also Lee v. Heritage Health & Hous., Inc.*, No. 07-CV-10628, 2009 WL 3154314, at *14 (S.D.N.Y. Sept. 30, 2009) ("If Plaintiff cannot show that she had a serious health condition, entitling her to FMLA leave, then, *a fortiori,* she cannot show that she was retaliated against for

exercising rights that were, in fact, protected by the Act.").[19]  Her FMLA retaliation claim is dismissed.

C.  NLRA Claims

Plaintiff's allegations raise the specter of two types of claims under the NLRA:  breach of the duty of fair representation ("DFR") and retaliation for lodging complaints with the NLRB.

### 1.  *Breach of Duty of Fair Representation*

A DFR claim "is a cause of action 'implied under the scheme' of the [NLRA], 29 U.S.C. §§ 151-169."  *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983)). "[T]he limitations period for filing such a claim in the district court is borrowed from section 10(b) of the NLRA, 29 U.S.C. § 160(b), which provides for a six-month limitations period."  *Id.* (citing *DelCostello*, 462 U.S. at 169).

Plaintiff does not specify whether the alleged breach of the DFR occurred on or after May 23, 2016 – six months before Plaintiff filed her complaint – but it appears that a claim could be based on the Union ignoring requests for meetings about pay practices and also ignoring the grievance from Union members.  (Complaint ¶ 24.)  The Court infers that this conduct occurred after February 2016, which is when Plaintiff was elected shop steward.  Plaintiff also complained about the Union's conduct in September 2016.  (*Id.*)  Thus, the Court will assume for purposes of this motion that a DFR claim is not time-barred.

To state a DFR claim, "a plaintiff must plead that (1) the union's conduct was 'arbitrary, discriminatory, or in bad faith' and (2) there was 'a causal connection' between the union's

---

[19] Further, Plaintiff has provided no facts plausibly connecting her request to Polomino for leave in May 2014 to Martin's subsequent disinterest in her bus's leak that month; she nowhere alleges that Martin knew of her leave request (even assuming that requiring Plaintiff to drive a bus with a leak could amount to an adverse employment action).

wrongful conduct and the member's injuries." *Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 283-84 (S.D.N.Y. 2014) (citing *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001)); *see 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 271 (2009). Irrational conduct is conduct that is "so far outside a wide range of reasonableness, as to be irrational." *White*, 237 F.3d at 180 (internal quotation marks omitted). When the DFR claim is based on omissions, the "[a]lleged 'acts of omission' must be 'egregious' and fall 'far short of minimum standards of fairness.'" *Perkins*, 73 F. Supp. 3d at 283 (quoting *N.L.R.B. v. Local 282, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 740 F.2d 141, 147 (2d Cir. 1984)). Furthermore, there is no breach of DFR "where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153-54 (2d Cir. 1994).

A plaintiff may bring against her employer a hybrid claim alleging violation of Section 301 of the LMRA, 29 U.S.C. § 185, for breach of a CBA on the employer's part and breach of the DFR on the union's part. *White*, 237 F.3d at 178-79. But Plaintiff here has not plausibly alleged either prong. She has not identified any provision of the CBA that Defendant violated or explained how Defendant violated it. As for the Union, Plaintiff describes an omission – she alleges the Union was non-responsive to meeting requests and a grievance about Defendant's pay practices – but fails to detail the contents of those messages or the grievance. Without more, the Court has no reason to find it plausible that the Union was acting in bad faith or arbitrarily, rather than exercising its prerogative to not advance a grievance it may well have deemed unlikely to succeed. *See Perkins*, 73 F. Supp. 3d at 284 (dismissing DFR claim where no basis to infer that union representative's decision to ignore text messages and not investigate grievance

was in bad faith or arbitrary, and finding it plausible that union representative found the grievance inconsequential or perhaps an unlikely vehicle for conveying a serious claim).[20] Thus, the DFR claim is dismissed.

### 2. *NLRA Retaliation*

This Court lacks subject matter jurisdiction to entertain a NLRA retaliation claim because the NLRB has exclusive jurisdiction over such claims. *See Moore v. Roadway Express, Inc. & Local 707*, No. 07-CV-977, 2008 WL 819049, at *8 (E.D.N.Y. Mar. 25, 2008) ("To the extent plaintiff alleges he was discharged by [the employer] in retaliation for the grievances and NLRB complaint that he filed, his claim falls squarely within the purview of section 8 of the NLRA and therefore, exclusive jurisdiction must rest with the NLRB unless the claim is collateral to plaintiff's fair representation claims against [the union]."); *see also Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 277 (2d Cir. 2005) ("The [NLRB] has primary jurisdiction, by virtue of 29 U.S.C. §§ 159-60, over claims arising under Sections 7 and 8 of the [NLRA], *id.* §§ 157-58."). The NLRA retaliation claim is therefore dismissed.

### D. Title VII Claims

Plaintiff potentially alleges claims for hostile work environment or discrimination based on race and gender, as well as retaliation, under both Title VII and NYSHRL.[21]

### 1. *Hostile Work Environment*

"To state a claim for a hostile work environment in violation of [Title VII or NYSHRL], a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is

---

[20] Moreover, Plaintiff's allegation that she meet with the Union and her employer in May 2016 undercuts her claim that the Union ignored meeting requests. (P's Mem. at 3.)

[21] The Court analyzes the Title VII claims and the NYSHRL claims together. *See Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 n.3 (2d Cir. 2016) (using same framework to analyze Title VII and NYSHRL

objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected status].'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)).

The objective hostility of a given work environment should be assessed based on the "totality of the circumstances." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Factors that courts consider in making this assessment include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23); *see Murdaugh v. City of N.Y.*, No. 10-CV-7218, 2011 WL 798844, at *4 (S.D.N.Y. Mar. 8, 2011). As a general rule, incidents must be more than merely episodic to be deemed "severe or pervasive," though a single act can meet the threshold "if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted). Because the focus in a hostile work environment claim is on the nature of the workplace, instances of hostility and discriminatory harassment of other co-workers can support the claim. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). "Ultimately, to avoid dismissal under [Rule] 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,' and '[the Second

---

retaliation claims); *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (*per curiam*) ("The standards for evaluating hostile work environment and retaliation claims are identical under Title VII and the NYSHRL.") (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir. 2000)).

Circuit has] repeatedly cautioned against setting the bar too high' in this context." *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Taking the allegations of the Complaint, the May 2017 Letter, and Plaintiff's opposition as true, as the Court must, Plaintiff has described a workplace that is unwelcoming, humiliating, and, quite frankly, disturbing. That said, she does not state a claim for a hostile work environment because she does not plausibly "allege that she suffered a hostile work environment because of her gender [or her race]." *Id*. at 114. "When [courts] say that Title VII, and corresponding state and local laws, are not a civility code, [they] are saying even if mean-spiritedness or bullying render a workplace environment abusive, there is no violation of the law unless that mean-spiritedness or bullying is rooted in . . . discrimination [based on a protected characteristic]." *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 606 (S.D.N.Y. 2010) (citation omitted). The harassment and bullying that Plaintiff describes – the sabotage to her vehicles, the vandalism, the potential cover-up of a hit and run, the intimidation by Robinson, and the other forms of antagonism – on their face do not appear to be gender-based or race-based. There are no allegations of sexually explicit behavior, gender-specific comments, or comments with racial undertones. *See Kelly*, 716 F.3d at 15-16 (affirming district court's dismissal of hostile work environment claim where plaintiff did not allege "sexually explicit behavior or conversations in the office," or actions or statements that "were of a sexual or gender-specific nature that could be perceived as demeaning to women") (internal quotation marks omitted). Such conclusory and speculative statements are insufficient."). There is likewise no indication that the experiences of other White women arose from their protected status or that the problems they encountered were even out of the ordinary.

Plaintiff seems to rely on the fallacy that because she belongs to a protected class, it is plausible that anything negative that happened to her at work was because of her membership in that class. *Cf. Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) ("Even if [plaintiff's] highly dubious claim that he was unfairly singled out for punishment by the instructors is credited, [plaintiff] has done little more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to his race.") (alterations and internal quotation marks omitted); *Varughese v. Mount Sinai Med. Ctr.*, No. 12-CV-8812, 2015 WL 1499618, at *42 (S.D.N.Y. Mar. 27, 2015) ("fallacy" for plaintiff to say: "I belong to a protected class; something bad happened to me at work; therefore, it must have occurred because I belong to a protected class") (internal quotation marks omitted); *Rissman v. Chertoff*, No. 08-CV-7352, 2008 WL 5191394, at *4 (S.D.N.Y. Dec. 12, 2008) ("In essence, plaintiff alleges that because he was yelled at [by his supervisors], this must have been because [of his protected status]. Such conclusory and speculative statements are insufficient.").

Plaintiff has not plausibly alleged "a linkage or correlation [between the incidents and] the claimed ground of discrimination." *Alfano*, 294 F.3d at 377. Accordingly, the hostile work environment claims are dismissed.

### 2. *Title VII and NYSHRL Retaliation*

Title VII prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). To state a claim for retaliation under Title VII, a plaintiff must plausibly allege that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly*, 716 F.3d at 14 (internal quotation marks omitted).

Plaintiff alleges that she engaged in protected activity when she complained of a hostile work environment to the EEOC in 2015. (May 2017 Letter ¶ 2.) She contends that the subsequent series of impairments to her vehicles was retaliatory.[22] But she has not provided facts plausibly suggesting that the problems with her buses were caused by saboteurs directed by Defendant or that these episodes are otherwise attributable to the employer. Further, Plaintiff fails to allege that Defendant knew of her EEOC complaint, and if so, when. Plaintiff has thus failed to state a plausible retaliation claim. *See Kelly v. N. Shore-Long Island Health Sys.*, No. 13-CV-1284, 2014 WL 2863020, at *10 (E.D.N.Y. June 22, 2014) (dismissing retaliation claim where plaintiff failed to allege that employer was aware of plaintiff's protected activity before taking adverse employment action); *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 609 (E.D.N.Y. 2013) (dismissing retaliation claim where, among other reasons, the complaint did "not allege that defendant was aware of that protected activity or considered that protected activity in deciding to [take adverse employment action against] plaintiff"); *Deal v. Seneca Cty.*, No. 07-CV-6497, 2012 WL 13661, at *12 (W.D.N.Y. Jan. 4, 2012) (adverse actions not attributable to employer cannot form basis of retaliation claim); *Wilson v. Reuben H. Donnelley Corp.*, No. 98-CV-1750, 1998 WL 770555, at *4 (S.D.N.Y. Nov. 2, 1998) ("The mere fact that plaintiff had earlier filed an EEOC complaint is not enough to support a contention that the

---

[22] Her termination a year or more after she filed her EEOC complaint is too temporally remote to be plausibly retaliatory. *See Fotopolous v. Bd. of Fire Comm'rs of Hicksville Fire Dist.*, 11 F. Supp. 3d 348, 368 (E.D.N.Y. 2014) ("[T]he span of one year between Plaintiff's protected conduct and the adverse actions taken against him is too attenuated to support an inference of retaliation."); *Jackson v. Elmhurst Hosp. Ctr.*, No. 10-CV-5248, 2012 WL 868965, at *8 (E.D.N.Y. Mar. 14, 2012) (five months to one year lapse between protected activity and alleged retaliation too remote to suggest causal connection); *McCormick v. Jackson*, No. 07-CV-7893, 2008 WL 3891260, at *2 (S.D.N.Y. Aug. 21, 2008) ("While there is no bright-line test for how much time is 'very close[]'" for temporal proximity to be sufficient, "the overwhelming majority of cases limit such time to less than six months, if not shorter."). And, in any event, her termination was clearly prompted by the September 27, 2016 events involving Poleski.

subsequent conduct of defendants was a result of the earlier complaint.").  The retaliation claim is therefore dismissed.

### 3.  *Gender and Race Discrimination*

To state a claim for discrimination in violation of Title VII, a plaintiff must plead facts plausibly suggesting that:  "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *Weinstock*, 224 F.3d at 42).  At the motion to dismiss stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation."  *Id.* at 84 (internal quotation marks omitted).

Plaintiff fails to state a claim of discrimination because her filings are devoid of any facts suggesting that the treatment she experienced was motivated in any way by discriminatory intent. "A common and especially effective method of establishing a *prima facie* case of discrimination" is "showing that the employer treated a similarly situated employee differently," but Plaintiff makes no attempt to do so here.  *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (internal quotation marks omitted).  Instead, she asserts two other bases for a discrimination claim based on gender and race.  The first is that there were only one or two other White, female employees at a given time.  (*See* Demand Letter ¶ 3.)  This does not suffice to infer a discriminatory hiring practice.  *See Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 70 (2d Cir. 2015) (statistics showing only raw percentages of employees' races do not support inference of discrimination absent any detail as to number of individuals and applicants, qualifications of applicants and those hired, and number of openings); *Lomotey v. Conn.-Dep't of Transp.*, 355 F. App'x 478, 481 (2d Cir. 2009) (summary order) ("[W]ithout further information

on key considerations such as the racial composition of the qualified labor pool, [raw numbers] cannot support an inference of discrimination."); *Wojcik v. Brandiss*, 973 F. Supp. 2d 195, 213 (E.D.N.Y. 2013) (racial breakdown of employees does not suffice to raise inference of discrimination) (collecting cases). The second basis is that other White, female employees were subjected to similar treatment – Porier had her tires slashed and Alleotta had money missing from her paycheck. (Demand Letter ¶ 3.) But there are no facts that indicate that Porier's and Alleota's treatment was based on their race and gender. Thus, the discrimination claims are dismissed.[23]

E. Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has only filed one complaint in this action, (*see* Complaint), although she has filed several additional written submissions, (May 2017 Letter; Demand Letter; P's Mem.). At the pre-motion conference on June 6, 2017, Plaintiff was apprised of the bases upon which Defendant intended to, and ultimately did, move to dismiss the Complaint. The Court offered

---

[23] Plaintiff also mentions in passing that she was discriminated against because of her age. But she fails to allege facts to raise an inference of age-based discrimination. Thus, she cannot sustain an age-based discrimination claim.

Plaintiff the opportunity to file an amended complaint, but she declined to take the Court up on its offer. After seeing Defendant's bases for dismissal fully fleshed out, Plaintiff now hopes that the offer to amend still stands. Out of an abundance of caution, and because Plaintiff is *pro se*, it does. Plaintiff has until April 2, 2018 to make a formal motion to amend which must attach a proposed amended complaint if she believes she can allege facts that would cure the defects described in the opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend where plaintiff had prior opportunities to amend, including after receiving notice as to defects alleged by defendants, and did not submit proposed amended complaint), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007). The case will be closed if no such motion is received by that date.

The proposed amended complaint will (if leave to amend is granted) completely replace the original complaint, and it must include all facts on which Plaintiff relies. It may not incorporate prior submissions, and it must take into account the principles set forth in this opinion and in the case law cited herein. Plaintiff must first lay out the facts in chronological order, providing dates (or at least approximate dates) as to relevant events, and specifics as to what individuals were involved and what occurred. She must then specify, in separately numbered counts, the claims she is bringing and under what statute or other provision she is bringing each one. For each count, she must indicate the facts on which she is relying for that claim. Plaintiff is strongly advised to confer with the New York Legal Assistance Group's *pro se* clinic for assistance in determining what claims may be viable and in framing those claims so that they might survive a motion to dismiss.

## IV.    Conclusion

For the reasons stated above, Defendant's motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 24).  Plaintiff has leave to replead her claims.  All claims will be dismissed with prejudice and the case will be closed if no motion to amend and proposed amended complaint are submitted by April 2, 2018.

**SO ORDERED.**

Dated: February 28, 2018
          White Plains, New York

_____
          CATHY SEIBEL, U.S.D.J.